# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| JOSHUA R. QUICK,<br><br>        Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | No. C15-3090-LTS<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Joshua R. Quick seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Quick contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision will be affirmed.

## I.    BACKGROUND

Quick was born in 1976. He completed a GED and did not attend special education classes. AR 625. He has worked as a truck driver, sales route driver and a metal fabricating shop helper. AR 627. He filed his application for SSI on November 14, 2011, and alleges a disability onset date of March 1, 2012, which he has described as his "clean and sober" date.[1] AR 371-72, 400, 539-44. Quick contends that he is disabled due to

---

[1] Quick also applied for disability insurance benefits (DIB) under Title II of the Act and initially alleged a disability onset date of September 23, 2005. AR 532. He later amended his alleged onset date to March 1, 2012. AR 400. Because Quick's DIB insured status expired on December 31, 2007, his DIB application was dismissed. AR 372.

status post-surgery of the spine, a fatty liver, osteoarthritis of the ankle, reduced hearing in one ear and anxiety disorder/panic disorder, a depressive disorder/bipolar disorder and a history of alcohol dependence. AR 375. Quick's claims were denied initially and on reconsideration. AR 442, 449, 458. He then requested a hearing before an Administrative Law Judge (ALJ). ALJ Tela Gatewood conducted a video hearing on July 3, 2013. Quick and a vocational expert (VE) testified. Over one year later, on August 28, 2014, the ALJ issued a decision denying Quick's claim. AR 368-87. The ALJ determined that Quick was unable to perform any past relevant work. AR 385. However, the ALJ determined that there was other work in the national economy Quick could perform, such as document preparer, ticket counter and sorter. AR 386.

Quick sought review by the Appeals Council, which denied review on November 25, 2014. AR 44. The ALJ's decision thus became the final decision of the Commissioner. AR 8; 20 C.F.R. § 416.1481. On January 28, 2015, Quick filed a complaint (Doc. No. 1) in this court seeking review of the Commissioner's decision.[2] The parties have briefed the issues and the matter is now fully submitted.

## II.   DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

---

[2] This case was initially assigned to United States District Judge Mark W. Bennett and referred to me, as a United States Magistrate Judge, for the filing of a report and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Upon my appointment as a United States District Judge, the case was reassigned to me. As such, this order constitutes this court's final disposition of the case.

in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that

the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

    1.    The evidence is insufficient to find that the claimant engaged in substantial gainful activity since March 1, 2012, the amended date of alleged onset of disability.

    2.    The claimant has the following severe impairments: status post-surgery of the spine, a fatty liver, osteoarthritis of the ankle, reduced hearing in one ear, an anxiety disorder/panic disorder, a depressive disorder/bipolar disorder and a history of alcohol dependence.

    3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

    4.    The claimant has the residual functional capacity to perform a range of light and sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and (b) and 416.967(a) and (b). The claimant can lift and/or carry and push and/or pull twenty pounds occasionally, ten pounds frequently. He can stand and/or walk for two hours in a workday. He can sit, with normal breaks for a total of six hours in a workday. The claimant can balance, crouch, kneel and climb ramps or stairs occasionally. He cannot work at unprotected heights or around hazards. The claimant cannot use work in environments with high noise levels. The claimant can perform simple, routine, repetitive

work in an environment with few changes in work processes. He cannot work with the public.

 5. The claimant is unable to perform any past relevant work.

 6. The claimant was born on December 16, 1976, and he was 35 years old on the amended alleged disability onset date. His age now is 37. For the purposes of this decision, the claimant is defined as a younger individual age 18-44, within the meaning of the Regulations.

 7. The claimant has at least a high school education and is able to communicate in English.

 8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

 9. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

 10. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2012 through the date of this decision.

AR 374-87.

## IV.  THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice

within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Quick argues the ALJ's decision is flawed for three reasons:

1. The ALJ failed to fully and fairly develop the record by not obtaining updated medical records for the 14 months after the hearing.

2. The ALJ failed to give proper weight to the work-related limitations established by Dr. Mittauer, Quick's treating psychiatrist.

3. The ALJ failed to properly develop the record by not ordering consultative examinations.

I will address these arguments separately below.

### A. *Development of the Record*

Quick argues that the ALJ did not properly develop the record by failing to obtain and consider additional medical evidence that arose during the 14 months between the hearing and the date the ALJ issued her decision. Doc. No. 12 at 13-17. There is no dispute that "there were a sizeable number of medical records dated during that fourteen months that were not in the administrative record at the time of the ALJ's decision." Doc. No. 13 at 8. Quick contends that the ALJ should have arranged to have the new evidence added to the record before she decided his claim.

The Commissioner concedes that the fourteen-month delay between the hearing and the ALJ's decision is well outside the average length of time for issuance of a decision. *Id*. at 8 n.2. However, the Commissioner notes that Quick never advised the ALJ that additional records were available. Indeed, the Commissioner points out that even when Quick (through counsel) contacted the ALJ to inquire about her delay in issuing a decision, Quick did not alert the ALJ that additional records were available. *Id*. at 10 (citing AR

531, 696).³ Moreover, the Commissioner notes that Quick failed to submit the additional records even when seeking review of the ALJ's decision by the Appeals Council. Doc. No. 13 at 10-11. Thus, the Commissioner contends that any failure to develop the record was due to Quick's failure to act, not any error on the part of the ALJ.

The Commissioner is correct. It is the claimant's burden to submit evidence to support his or her claim. *See, e.g.,* 20 C.F.R. § 416.912. The ALJ's duty to develop the record is generally triggered by a claimant making the ALJ aware of development needs. *Snead v. Barnhart*, 360 F.3d 834, 839 (8th Cir. 2004) (holding that the ALJ should have developed the record after becoming aware of plaintiff's impairment); *see also Kitts v. Apfel*, 204 F.3d 785, 786 (8th Cir. 2000) (indicating that the ALJ had no duty to develop evidence when the claimant did not put him on notice of the need to develop the record further). Here, the ALJ advised Quick before the hearing that she would consider the issues he raised, the evidence in his file and any additional evidence he provided. AR 469. The ALJ indicated that if Quick needed assistance in obtaining additional evidence, he should contact the ALJ, his local field office or his representative. AR 470. Moreover, and again in advance of the hearing, the Social Security Administration advised Quick of three methods of submitting additional evidence. AR 677.

While Quick submitted some medical records before the hearing (AR 1237-1573), he did not submit his additional records at any of the established levels of administrative review. 20 C.F.R. § 416.1400. After the ALJ issued her decision, Quick filed a request for review by the Appeals Council. AR 367. The appeal form advised Quick that if he had additional evidence, he should either submit it with his request for review or request an extension of time to submit the evidence. *Id.* Quick then requested an additional

---

³ If anything, Quick's counsel at the agency level may have conveyed the impression that no additional records existed. In inquiring about the ALJ's delay in issuing a decision, counsel stated that Quick "has no insurance so he is not able to receive medical treatment . . .," a statement that could reasonably lead the ALJ to conclude that there was no additional medical evidence. AR 531.

9

twenty-five days to submit written arguments. *Id.* However, he submitted no evidence or argument during that period of time.

On November 25, 2014, the Appeals Council issued its notice denying plaintiff's request for review. AR 44. *Six weeks* later, acting through counsel, Quick submitted a brief in support of request for review and attempted to submit over 300 pages of medical records by fax at the same time. AR 38. Because the attempted fax did not go through, he requested a bar code for submission of additional evidence. *Id.* After receiving a bar code, Quick finally submitted the additional records on January 27, 2015, two months after the Appeals Council issued its notice that ended the administrative phase of this case. *Id.*

Quick's inaction (or, perhaps more accurately, the inaction of his attorney) defeats his argument. The Commissioner's regulations make it clear that the claimant has the responsibility to provide evidence: "You (claimant) must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you are disabled." 20 C.F.R. § 416.912; *see Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991). Here, Quick did not meet his burden of providing the additional evidence. Not only did he fail to submit it to the ALJ while the decision was pending, he did not even advise the ALJ that the evidence existed. Nor did Quick submit the additional evidence for review by the Appeals Council. While it is truly unfortunate that the additional evidence did not make its way into the record, this omission is entirely attributable to Quick, not to any failure by the ALJ to fully and fairly develop the record.

### B. *Dr. Mittauer's Opinion*

The ALJ considered the medical source opinions in the record and explained the weight she assigned each opinion. AR 382-85. Quick argues that the ALJ erred in discounting the opinion of his treating psychiatrist, Mark Mittauer, M.D. As I will explain below, Quick's argument amounts to an impermissible attempt to reweigh the evidence.

The ALJ offered valid reasons, grounded in substantial evidence, for according little weight to Dr. Mittauer's opinion. AR 383-84.

An ALJ must assign controlling weight to a treating-source's medical opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 20 C.F.R. § 416.927(c)(2). If a treating-source opinion is not entitled to controlling weight, then the opinion should be weighed along with the other medical-opinion evidence pursuant to the criteria set forth in 20 C.F.R. § 416.927(c). Relevant factors include:

(1) whether the expert examined the claimant;

(2) whether and to what extent the expert treated the claimant;

(3) whether the opinion relies upon probative evidence and provides a persuasive rationale;

(4) the consistency of the opinion with the record as a whole;

(5) the specialization, if any, of the medical source; and

(6) any other relevant considerations, including the source's familiarity with the Commissioner's standards and the extent to which the source is familiar with the case record.

20 C.F.R. § 416.927(c)(1)-(6). The Eighth Circuit Court of Appeals, consistent with the governing regulations, recognizes that treating-source opinions are generally entitled to "substantial weight" but that an ALJ may "justifiably discount" such an opinion when it is "inconsistent or contrary to the medical evidence as a whole." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011).

On January 11, 2012, Dr. Mittauer completed a mental impairment questionnaire, a predominantly check-box form that Quick's attorney drafted. AR 1410-15. Dr. Mittauer checked numerous boxes indicating functioning that was seriously, or even more, limited. AR 1412-13. The ALJ concluded that Dr. Mittauer's check-box opinion was

11

entitled to little weight because it was inconsistent with the doctor's own treatment recommendations and unsupported by the medical evidence of record. AR 384. When a doctor's own medical reports do not support his or her opinion, the ALJ may discount the opinion. *See* 20 C.F.R. § 416.927(c)(3); *see also Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010) (holding that the ALJ can discount even a treating physician's opinion that is not supported by the physician's own reports). In weighing a doctor's opinion, the ALJ may consider inconsistencies between the opinion and the claimant's activities of daily living. *See Owen v. Astrue*, 551 F.3d 792, 799 (8th Cir. 2008).

Here, the ALJ noted that in contrast to Dr. Mittauer's opinion that Quick had marked and extreme limitations, Dr. Mittauer had recommended only outpatient treatment, psychotropic prescriptions and quarterly medication management appointments. AR 384. Further, the ALJ explained that the medical evidence documented only intermittent, mildly-abnormal medical signs that did not support the degree of limitations described in Dr. Mittauer's opinion. *Id.*; *see* 20 C.F.R. § 416.927(d)(4). The ALJ also noted that Quick had applied for jobs while allegedly disabled, although he had not been hired. *Id*.

Quick contends that the ALJ could not fairly conclude that Dr. Mittauer's opinion was inconsistent with the treatment record because the ALJ did not obtain all of Quick's treatment records. Doc. No. 12 at 20. This argument fails for two reasons. First, as addressed above, the ALJ had no duty to obtain additional medical records absent some notice from Quick that those records were available. Second, Dr. Mittauer could not have based his opinion on records that were not in existence at the time he completed the assessment form in January 2012. As the ALJ noted, the medical evidence of record at the time of the ALJ's decision indicated only intermittent, mild symptoms. AR 381, 384. Even if Quick's condition deteriorated after Dr. Mittauer issued his opinion, Quick does not explain how that future deterioration could salvage an earlier, unsupported medical opinion. Based on my review of the entire record, I find that the ALJ properly weighed

Dr. Mittauer's opinion and adequately explained her rationale for giving the opinion little weight.

## C. *Consultative Examination*

Finally, Quick argues that no medical evidence supports the ALJ's decision regarding his functional limitations. Doc. No. 12 at 21-23. Specifically, he argues that the ALJ should have ordered consultative physical and mental examinations to address those functional limitations. *Id*. I find, however, that the record was adequately developed to permit the ALJ to make an informed disability decision, meaning no further development was needed. *Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001).

The record contains substantial evidence addressing Quick's impairments and functional abilities, including medical records and Quick's responses on agency forms. In addition, the ALJ permitted Quick, through his chosen attorney representative, to present his best case for disability at the administrative hearing. *Thomas*, 928 F.2d at 260 (claimant bore burden of proving disabilities and was responsible for presenting strongest case possible). As I noted earlier, an ALJ is not required to act as a claimant's attorney. *Clark*, 28 F.3d at 830; *see also Richardson v. Perales*, 402 U.S. 389, 403 (1971) (noting that the agency operates as an adjudicator, not an advocate or adversary).

A consultative examination is required only if the evidence of record is insufficient to determine whether claimant is disabled. *Halverson*, 600 F.3d at 933. Here, the record contains medical opinions that support the ALJ's RFC findings, including medical evidence and opinions provided by state agency medical consultants. AR 1211-18, 1416, 1435-38. State agency medical consultants "are highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i) (emphasis added). In addition, the ALJ gave great weight to the consultative psychologist's opinion that Quick had mild problems with working memory but few other abnormal medical signs. AR 384, 1418-20.

13

The ALJ's decision demonstrates that the ALJ did not rely entirely on the state agency medical experts' opinion. Instead, the ALJ considered the entire record, which also included medical evidence and the consultative psychologist's opinion. AR 382-85. The record was sufficiently developed for the ALJ to make proper RFC findings. The ALJ did not err by failing to order additional consultative examinations.

## VI. CONCLUSION

After a thorough review of the entire record and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Quick was not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the final decision of the Commissioner is **affirmed**. Judgment shall enter against Quick and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 19th day of February, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE